Alexander F. Giovanniello (CSB # 125562)
Thomas C. Swann (CSB #229422)
**GIOVANNIELLO LAW GROUP**
One Pointe Drive, Suite 300
Brea, California 92821

Ph:  (714) 364-4000
Fax: (714) 364-4001

Attorneys for Defendants:
GRANCARE, LLC dba
VALE HEALTHCARE CENTER;
MARINER HEALTH CARE, INC.; and
REMY RHODES.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH THROWER, by and through her Successor in Interest, Rosie Lee Mills; ROSIE LEE MILLS; HELEN MILLS; LORETTA EDDINGS; LASHAWN THROWER;PERRY JOHNSON, JR.; ELLEN MASON, individuals; <br><br>  Plaintiffs, <br><br> vs. <br><br> GRANCARE, LLC dba VALE HEALTHCARE CENTER; MARINER HEALTH CARE MANAGEMENT COMPANY; MHC WEST HOLDING COMPANY;  MARINER HEALTH CARE, INC.; REMY RHODES; and DOES 1-250, <br><br>  Defendants | Case No.: <br><br> NOTICE OF REMOVAL |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendant Mariner Health Care, Inc. ("MHC") hereby removes the above-styled action to this Court from the Superior Court of the State of California for the County of Contra Costa.  In support thereof, MHC states as follows:

1.     MHC removes this action pursuant to 28 U.S.C. § 1441(a) because it is between citizens of different States and the amount in controversy exceeds the sum of $75,000.00,

1   exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a)(1).

2         2.     There are seven Plaintiffs in this action, including the estate of decedent Ruth Thrower and six individuals who are identified as Ms. Thrower's surviving heirs.  Plaintiffs commenced this action on September 14, 2015, by filing a Complaint ("Compl.") in the California Superior Court for Contra Costa County, styled *Thrower et al. v. GranCare, LLC d/b/a Vale Healthcare Center, et al.*, Case No. C15-01626 ("State Court Action").  A copy of the docket sheet and all other documents on file with the Superior Court for Contra Costa County in the State Court Action are attached hereto as **Exhibit A**.

      3.     Defendants GranCare, LLC d/b/a Vale Healthcare Center ("GranCare" or "Facility") and Mariner Health Care Management Company ("MHCM") received Plaintiffs' Complaint and Summons on September 21, 2015.  Plaintiffs subsequently dismissed MHCM.  (*See* **Exhibit F**.)  None of the other Defendants, including Removing Defendant MHC, have been served with process.  Thus, this Notice of Removal is timely.  *See* 28 U.S.C. § 1446(b)(2)(C); *see also In re Johnson & Johnson Cases*, Case Nos. 2:15-cv-05311-JGB (SPx), *et al.*, 2015 WL 5050522, at *8 n.8 (C.D. Cal. Aug. 24, 2015) (noting that a defendant may remove a case before receiving service of process (collecting cases)).

      4.     Plaintiffs' Complaint seeks money damages but it does not allege an amount in controversy or the citizenship of Plaintiffs. (Compl. at 23 & ¶¶ 1, 95.)  On September 14, 2015, Plaintiffs served upon Defendants a Statement of Damages that revealed that the amount-in-controversy exceeds the jurisdictional minimum of $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).  (A copy of Plaintiffs' Statement of Damages is attached hereto as **Exhibit B**.)  Moreover, as alleged herein, all of the Plaintiffs are citizens of the State of California.

      5.     All of the Defendants named in the State Court Action join in this Notice of Removal, except (1) Defendant Remy Rhodes who was fraudulently joined to the State Court Action; (2) Defendants "DOES 1 – 250" who were sued under fictitious names and therefore are disregarded; (3) Defendant MHC West Holding Company, which has not been served with process.  *See* 28 U.S.C. § 1446(b)(2) (noting that only "defendants who have been properly joined and served must join in or consent to the removal of the action") and (4) Defendant

MHCM, which Plaintiffs previously dismissed.

**1.      DIVERSITY OF CITIZENSHIP**

    **A.      Citizenship of Plaintiffs**

5.      Pursuant to 28 U.S.C. § 1332(a)(1), complete diversity of citizenship exists between the parties to the State Court Action.

6.      Plaintiff Ruth Thrower (deceased), who was a resident of the Facility whose estate is alleging claims through Ms. Thrower's successor in interest, Rosie Lee Mills, is a citizen of the State of California because, prior to her death, Ms. Thrower was a California citizen. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent").

7.      Plaintiff Rosie Lee Mills, insofar as she is asserting claims in her individual capacity as a surviving heir of Ms. Thrower, is a citizen of the State of California.

8.      Plaintiff Helen Mills is a citizen of the State of California.

9.      Plaintiff Loretta Eddings is a citizen of the State of California.

10.     Plaintiff Lashawn Thrower is a citizen of the State of California.

11.     Plaintiff Perry Johnson, Jr. is a citizen of the State of California.

12.     Plaintiff Ellen Mason is a citizen of the State of California.

    **B.      Citizenship of Defendants**

13.     Removing Defendant MHC is a Delaware corporation with its principal place of business in Georgia. MHC thus is a citizen of the States of Delaware and Georgia. *See* 28 U.S.C. § 1332(c)(1)

14.     Defendant MHCM is a Delaware corporation with its principal place of business in Georgia. MHCM thus is a citizen of the States of Delaware and Georgia. *See* 28 U.S.C. § 1332(c)(1). As noted above, however, Plaintiffs previously dismissed MHCM from this case.

15.     Defendant MHC West Holding Company is a Delaware corporation with its principal place of business in Georgia. It thus is a citizen of Delaware and Georgia. *See* 28 U.S.C. § 1332(c)(1). As noted above, Plaintiffs have not served MHC West Holdings Company.

16. Defendant GranCare is a limited liability company organized under the laws of Delaware. Its citizenship thus is determined by the citizenship of its members. *See Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."). GranCare has a single, non-managing member, Defendant MHC West Holding Company, which, as noted above, is a Delaware corporation with its principal place of business in Georgia. *See* 28 U.S.C. § 1332(c)(1). Thus, for purposes of diversity jurisdiction, GranCare also is a citizen of the States of Delaware and Georgia.

17. Defendant Rhodes is a citizen of the State of California. As explained in Section 3 below, however, Plaintiffs improperly joined Rhodes to the State Court Action. Her presence in this case therefore is ignored for federal diversity purposes.

18. Defendants "Does 1 through 250" were sued under fictitious names and therefore are disregarded. *See* 28 U.S.C. § 1441(b)(1) (mandating that "the citizenship of defendants sued under fictitious names shall be disregarded").

19. Although not named in the case caption, "Allah Brown" is identified in the Complaint ¶ 95 (as part of Plaintiffs' wrongful-death claim) as a "surviving heir" of Ms. Thrower. In the very next paragraph, however, Plaintiffs allege (without explanation or any supporting factual allegations) that Allah Brown is an "indispensable party" who is "named as a nominal *defendant* accordingly." (Compl. ¶ 96 (emphasis added).) Presumably, the Complaint's reference to Allah Brown as a "nominal defendant" is a mere typographical error, and Plaintiffs actually meant to state that Allah Brown, in her capacity as a surviving heir, is a "nominal *plaintiff*" for purposes of Plaintiffs' wrongful death claim. *See* Cal. Civ. Proc. Code § 377.60. In any event, as a nominal party, Allah Brown's citizenship is disregarded. *See Murabito v. Stericycle, Inc.*, Case No. 5:14-cv-04771-EJD, 2015 WL 1061979, at *2 (N.D. Cal. Mar. 10, 2015) ("When examining for the existence of diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'" (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).

///

## 2. AMOUNT-IN-CONTROVERSY

20. Plaintiffs' Complaint asserts causes of action based on allegedly deficient care and treatment that Ms. Thrower purportedly received at GranCare's nursing-home facility in San Pablo, California. Ms. Thrower was a resident at the Facility from April 2, 2015 to July 2015. (The Complaint ¶ 21 incorrectly alleges that Ms. Thrower was admitted to the Facility "[i]n or about March 2015.") Ms. Thrower died on July 30, 2015. (Compl. ¶ 39.)

21. The Complaint contains five counts. Ms. Thrower's estate alleges a claim against all Defendants for elder abuse under Cal. Welf. *&* Inst. Code § 15610 *et seq*. (Compl. ¶¶ 16-61 (Count I)); a claim against all Defendants for negligence (Compl. ¶¶ 62-66 (Count II)); a claim against all Defendants for negligent hiring and supervision (Compl. ¶ 67-74 (Count III)); and, a claim against GranCare, only, for fraud (Compl. ¶¶ 75-93 (Count IV)). Finally, the six individual Plaintiffs assert a claim against all Defendants for wrongful death. (Compl. ¶¶ 94-101 (Count V)).

22. Plaintiffs' Complaint seeks monetary and punitive damages, attorney's fees (as to Count I, only), and Plaintiffs' costs of suit in the State Court Action, but it does not allege an amount-in-controversy. (Compl. at 23.)

23. On September 14, 2015, Plaintiffs served upon Defendants a Statement of Damages that establishes that the damages Plaintiffs seek in their Complaint far exceed the minimum amount-in-controversy of $75,000 exclusive of costs and interest. Specifically, Plaintiffs seek $250,000 in special damages and $25 million in general damages. (*See* **Exhibit B** at 1-2.)

24. Plaintiffs' Complaint alleges that all Defendants acted "in concert with one another" (Compl. ¶ 11), as "mere alter-egos" (Compl. ¶ 10), and "in furtherance of their common design and agreement" to maximize profits by underfunding and understaffing the Facility to the detriment of the Facility's residents. (Compl. ¶ 11). Plaintiffs also contend that all of the Defendants "aided and abetted each other in accomplishing the acts and omissions alleged" in the Complaint. (Compl. ¶ 11.) Accordingly, Plaintiffs' Statement of Damages establishes that Plaintiffs' claims satisfy the amount-in-controversy requirement for federal

diversity jurisdiction as to all Defendants. *See Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir. 1976) ("[T]he test for aggregating claims of one plaintiff against multiple defendants and of multiple plaintiffs against one defendant are 'essentially the same: the plaintiff's claims against the defendants must be common and undivided so that the defendants' liability is joint and not several.'" (ellipsis omitted)).

3. **DEFENDANT RHODES WAS FRAUDULENTLY JOINED IN THE STATE COURT ACTION**

25. The Complaint ¶ 4 names Remy Rhodes, who is the Administrator of Defendant GranCare's nursing-home facility, as a Defendant in the State Court Action. Although Rhodes is a California citizen, she must be disregarded in assessing diversity of citizenship because Plaintiffs fraudulently joined her to the State Court Action. Indeed, on November 9, 2015, the Honorable Richard Seeborg of this Court ruled that Rhodes was fraudulently joined to a substantively similar nursing home negligence suit against the Facility because the complaint in that action failed to state a claim against her, and the failure was clear according to California law. (11/9/15 Order at 9, lines 15-16 in *Johnson v. GranCare, LLC et al.,* Case No. 15-cv-03585-RS, ECF #17 (N.D. Cal. 2015) ("*Johnson* Order"), attached as **Exhibit C**.)[1] The sound reasoning of the *Johnson* Order compels the same outcome here because Plaintiffs in this case likewise do not plead a viable cause of action against Rhodes, and their failure is obvious under state law.

26. "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Where a resident defendant is fraudulently joined, "the defendant's presence in the lawsuit is ignored for purposes of determining diversity." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

---

[1] The Order also is available at *Johnson v. GranCare, LLC*, Case No. 15-cv-03585-RS, 2015 WL 6865876 (N.D. Cal. Nov. 9, 2015).

27. In determining whether a defendant was improperly joined, the United States Court of Appeals for the Ninth Circuit has directed that courts "look only to a plaintiff's pleadings to determine removability." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (internal quotation marks and citation omitted)). On the other hand, where fraudulent joinder is at issue, courts may go "somewhat further" by allowing a defendant to present facts showing that the joinder was fraudulent. *See id.* (citing *McCabe*, 811 F.2d 1339). The Ninth Circuit has made clear, however, that a court's review of the plaintiff's complaint "is constrained to the facts actually alleged therein; it does not extend to facts or causes of action that *could* be alleged via an amended complaint." *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715, at *4 (E.D. Cal. June 2, 2011) (emphasis in original) (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989) (refusing to consider allegations in a proposed amended complaint because whether a case was properly removed "must be resolved by reference to the complaint at the time the petition for removal was filed" (citations omitted)).

28. Unfortunately, this is not the first instance where Defendants have encountered the improper anti-removal strategy employed by Plaintiffs—*i.e.,* naming a single, non-diverse nursing home administrator as a defendant. Like *Johnson*, this case is a reprise of a prior lawsuit against Defendant MHCM where a nursing-home administrator was fraudulently joined to defeat diversity jurisdiction. *See Cranston v. Mariner Healthcare Mgt. Co.*, No. 3:03CV10-D-A, 2003 WL 21517999 (N.D. Miss. June 18, 2003). The *Cranston* court noted that "it is axiomatic that where a plaintiff's complaint is devoid of any factual allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated." *Id.* at *3. "Failure to specify a factual basis for recovery against a nondiverse party, therefore, constitutes a fraudulent joinder of that party." *Id.* In an excerpt that could have been written with this case in mind, the *Cranston* court explained:

> [T]he Plaintiffs merely allege, in very general and conclusory terms, that the Defendants collectively engaged in tortious conduct. There are no specific factual allegations in the complaint concerning the individual [administrator's] participation in any of the alleged tortious acts, much less any factual allegations that would tend to suggest that her involvement was anything other than peripheral. Instead, the Plaintiffs simply allege in very general terms that the

> Defendants, as a group, will face liability for their actions. Nowhere in the complaint do the Plaintiffs allege how [the administrator] directly participated in or authorized the commission of a tort, or how [the administrator's] alleged liability is based on her own individual wrongdoing; instead, the Plaintiffs merely use boilerplate language that collectively implicates the Defendants. As the court has already explained, hypothetical allegations of this sort are plainly deficient.
>
> Accordingly, without a factual basis for concluding that [the administrator] directly, personally, or actively participated in any alleged tortious conduct, the court finds that the Plaintiffs have no possibility of establishing a cause of action against [the administrator] in state court, and that she was therefore fraudulently joined to defeat diversity.

*Id.* at *3-4 (internal citation omitted).

29.  Like *Johnson* and *Cranston*, Plaintiffs' Complaint—a form document that Plaintiffs' counsel routinely uses in suing nursing homes in other cases—is devoid of allegations that Defendant Rhodes herself committed any specific wrongdoing. Instead, paragraph 4 of the Complaint lumps Rhodes together with the other Defendants and thereafter, directs substantive allegations—which comprise a vague and unsupported laundry list of alleged wrongdoing by the Facility—to all "Defendants," collectively, without ascribing any specific act or omission to Rhodes. This is precisely the type of pleading gamesmanship that the fraudulent-joinder doctrine forbids. *See Donald v. Arrowood Indem. Co.*, Civil Action No. 2:10cv227KS-MTP, 2011 WL 4853290, at *7 (S.D. Miss. Nov. 23, 2010) ("The focus of this [fraudulent joinder] inquiry must be on the factual allegations specific to [the resident defendant]; [plaintiff] cannot rely upon the numerous, collective allegations of 'Defendants'' wrongdoing.").

30.  This Court properly applied this principle in *Johnson* in concluding that Rhodes had been improperly joined to that action to prevent removal. The Court pointed out that "the complaint makes little attempt to connect any claim to the actions of Rhodes," noting that "[b]eyond [an] introduction [paragraph in the complaint], virtually every sentence that follows is addressed to *all* defendants—none are directed specifically to Rhodes." (*Johnson* Order at 5, lines 7-8, 11-13.) Plaintiffs' Complaint in this case likewise suffers from the same transparent flaw in that it fails to allege any specific act or omission by Rhodes that gives rise to Plaintiffs' claims.

31. The closest Plaintiffs come to leveling a substantive allegation against Rhodes is in Paragraphs 40 through 48 of the Complaint, but even these averments are grossly deficient. In each paragraph, Plaintiffs cite a single statutory or regulatory provision applicable to the licensing and/or certification of nursing facilities which, according to Plaintiffs, imposed on Rhodes, "as the administrator of the Facility," various duties and responsibilities. Plaintiffs conclude each paragraph with the following (or closely similar) boilerplate allegation: "Remy Rhodes did not properly carry out these duties thus allowing the injuries suffered by Ruth Thrower to occur." (Compl. ¶ 40; *see also id.* ¶¶ 41-48 (reciting similar fact-free allegations).) Unfortunately for Plaintiffs, the regulations they cite do not render a non-clinician administrator, like Rhodes, personally liable for allegedly deficient care rendered to residents. (*Johnson* Order at 7 n.5 (rejecting similar allegations on the same ground).) Moreover, as this Court determined in *Johnson* in rejecting similar allegations, even if such duties exist, Plaintiffs have alleged nothing factually "showing how Rhodes breached her duties or caused [Ms. Thrower's alleged] injuries." (*Johnson* Order at 7 n.5.)

32. Nor could Plaintiffs make such allegations in good faith anyway because Defendant Rhodes never rendered care and treatment to any resident, including Ms. Thrower, nor did she ever do anything to harm Ms. Thrower. (*See* Declaration of Remy Rhodes ("Decl.") ¶¶ 3, 5-6, attached as **Exhibit D**.)

33. Because Plaintiffs can plead no facts that implicate Rhodes in any misconduct, Plaintiffs resort to claiming that Rhodes, and the other Defendants, are jointly liable for each other's tortious acts based on thinly-sketched secondary-liability theories—*i.e.,* alter-ego (Compl. ¶ 10), conspiracy (Compl. ¶ 11) and aiding and abetting (Compl. ¶¶ 11)—none of which is properly pleaded, explained or factually supported. Indeed, Plaintiffs' secondary-liability allegations are indistinguishable from "egregious examples of generic boilerplate" that the California Supreme Court has condemned. *See Moore v. Regents of Univ. of Cal.*, 793 P.2d 479, 486 n.12 (Cal. 1990) (providing examples of such allegations). Plaintiffs fail to state a claim against Rhodes for this reason alone. *See Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1135, 1137 (S.D. Cal. 1998) (individual defendants were fraudulently joined because "no material

1  allegations against these defendants are made"); *see also Banger v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 637 (S.D. Miss. 2002) ("conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined.").

### A.  Plaintiffs Fail To State A Direct Liability Claim Against Rhodes

34.  Rhodes is named in only four of the five counts in the Complaint, which are directed to "all Defendants"—elder abuse (Count I), negligence (Count II), negligent hiring and supervision (Count III), and wrongful death (Count V). (Compl. at 5, 16, 17, 22.) As explained below, Plaintiffs do not come close to stating a claim—nor could they do so—against Rhodes under any of these Counts, and their failure is obvious under California law.

#### 1.  Elder Abuse (Count I)

35.  Count I of the Complaint avers that all "Defendants" are liable under the California Elder Abuse and Dependent Adult Civil Protection Act. (Compl. ¶¶ 16-61.) As the Court noted in the *Johnson* Order, the Elder Abuse Act requires proof that a "defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of th[e] abuse." (*Johnson* Order at 5, lines 4-5 (quoting Cal. Welf. *&* Inst. Code § 15657).)

36.  In finding that the *Johnson* plaintiffs failed to state an elder abuse claim against Rhodes, the Court pointed out that, other than identifying Rhodes as GranCare's administrator and alleging that she was responsible for the "day-to-day implementation of facility policy" and the "screening of patients prior to admission to ensure the facility admit[s] only those patients for whom it can provide adequate care," (*Johnson* Order at 5, lines 9-11), "virtually every sentence that follows is addressed to *all* defendants collectively—none are directed specifically to Rhodes." (*Id.* at 5, lines 11-13.) After examining Plaintiffs' "general and conclusory" allegations, the Court observed that, "the complaint offers no factual basis suggesting that Rhodes personally participated in abusive or neglectful conduct," (*id.* at 6, lines 7-8), nor does it plead facts to substantiate Plaintiffs' "intentional understaffing" theory. (*Id.* at 6, lines 17-18.)

The same analysis applies to this case. Like the deficient allegations against Rhodes in *Johnson*, Plaintiffs' Complaint does not allege any specific conduct by Rhodes *at all*, much less

that she specifically did anything to abuse or neglect Ms. Thrower.  In sum, just as *Johnson*, Plaintiffs failed to state an elder abuse claim against Rhodes because their complaint "lack[ed] a specific factual basis for concluding that [she] [] directly, personally, or actively participated in conduct constituting abuse or neglect," (*Johnson* Order at 6, lines 22-24), Plaintiffs in this case fail to state an elder abuse claim against Rhodes for the same reasons, and the failure is obvious under California law.

### 2. Negligence (Count II)

37. Count II of the Complaint alleges that all "Defendants" are liable for negligence. (Compl. ¶¶ 62-66.)  "Under California law, the elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)."  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (internal quotation marks and citation omitted).

38. Plaintiffs' Complaint fails to plead these elements.  As noted above, Plaintiffs have not identified any statutory or regulatory duty of care that makes non-clinician *administrators*, like Rhodes, personally liable for allegedly substandard care that a facility renders to its residents.  (*Johnson* Order at 7 n.5.)  Nor have Plaintiffs alleged any facts which so much as hint that Rhodes had any relationship with Ms. Thrower that otherwise could give rise to a legal duty of care.  In addition, even if such a duty existed, Plaintiffs do not allege any specific act or omission by Rhodes that could have breached these duties or caused Ms. Thrower's purported injuries, which Rhodes specifically denies in any event.  (Decl. ¶ 5.)

39. The Complaint contends that the allegedly deficient care that Ms. Thrower received was the result of Defendants' scheme aimed at "maximizing profits from the operation of the Facility" by intentionally underfunding, understaffing and inadequately training Facility personnel to the detriment of the Facility's residents.  (Compl. ¶ 11.)  As Rhodes attests, these allegations are wrong (Decl. ¶ 7 ("No such scheme ever was devised or implemented, nor would I ever allow that to occur as the Facility's Administrator.  At all times, the Facility strived to

provide the best possible care and treatment to Ms. Thrower and other residents, which is the Facility's top priority.")), nor could they possibly form the basis of a viable claim against Rhodes in any event.  Other than repeatedly reciting bare allegations of underfunding, understaffing and insufficient training of Facility personnel, Plaintiffs' Complaint factually alleges nothing whatsoever to substantiate Plaintiffs' "profits over people" theory.  The Complaint also is bereft of facts demonstrating or describing Rhodes' role or involvement in this non-existent scheme, nor does the Complaint explain how the scheme caused Ms. Thrower's alleged injuries.

40. In *Johnson*, this Court determined that similar, boilerplate allegations failed to state a viable claim against Rhodes. (*Johnson* Order at 6, lines 17-21 ("[P]laintiffs lack the factual allegations needed to support their 'intentional understaffing' theory.  The complaint says nothing, for example, about the number of staff at the facility, Rhodes' involvement in hiring, Rhodes' conduct in response to surveys conducted by the public health department, or how reckless understaffing by Rhodes directly caused Johnson's injuries.").)  For the same reasons, Plaintiffs in this case have failed to state a negligence claim—or any other cause of action—against Defendant Rhodes, and the failure is obvious under California law.

### 3. Negligent Hiring and Supervision (Count III)

41. Count III of the Complaint alleges that all "Defendants" are liable for negligent hiring and supervision of certain Facility employees. (Compl. ¶¶ 67-74.)  But Rhodes could not be liable under this Count because Plaintiffs specifically allege that *Rhodes herself* is one of the Facility employees whom *other Defendants* negligently hired and failed to supervise properly. (*See* Compl. ¶ 74 (alleging that "Defendants' negligence in hiring, supervising and/or retaining Remy Rhodes (Administrator) . . . caused Ruth Thrower injury in an amount and manner to be proven at time of trial.").)

42. Under California law, only an *employer* (or someone acting in that capacity) can be liable for negligent hiring and supervision of its employees.  *See Inzerillo v. Green Tree Serv., LLC*, Case No. 13-cv-06010-MEJ, 2014 WL 6660534, at *7 (N.D. Cal. Nov. 24, 2014) ("California law recognizes that an *employer* can be liable for negligently hiring, supervising or

1 retaining an unfit employee." (emphasis added)). Here, Plaintiffs' Complaint does not (and
2 cannot) allege that Rhodes employed the Facility's staff; instead, the Complaint ¶ 4 alleges that
3 Rhodes was *employed* by the Facility as its Administrator. Moreover, the Complaint pleads no
4 facts to support even a bare inference that Rhodes, in her role as the Facility's Administrator,
5 did or failed to do anything that could make her personally liable for negligent hiring or
6 supervision of other Facility personnel. Accordingly, Plaintiffs have failed to state a claim
7 against Rhodes under this Count and their failure is obvious under state law.

### 4. Wrongful Death (Count V)

43. Count V of the Complaint alleges that all "Defendants" are liable for wrongful death. (Compl. ¶¶ 94-101.) "Wrongful death is a statutory cause of action asserted when 'the death of a person [is] caused by the wrongful act or neglect of another.'" (*Johnson* Order at 7, lines 2-3 (quoting Cal. Civ. Proc. Code § 377.60).) In *Johnson*, the Court noted that the plaintiffs had failed to state a wrongful death claim against Rhodes because their complaint "lack[ed] factual allegations showing Rhodes' conduct caused Johnson's death. The complaint does not point to an act or omission that serves as a basis for the wrongful death claim against Rhodes." (*Johnson* Order at 7, lines 11-13.) The Court properly ruled that, "without any factual basis to support Rhodes' individual wrongdoing, plaintiffs cannot state a claim for relief against Rhodes." (*Id.* at 7, lines 20-21.)

44. The Court's reasoning compels the same conclusion in this case. As in *Johnson*, Plaintiffs' Complaint does not specifically aver that Rhodes did *anything*, let alone implicate her in conduct that purportedly caused Ms. Thrower's death. Nor could Plaintiffs make such allegations in good faith anyway. Indeed, Plaintiffs' reliance on improper "group pleading"— *i.e.,* assigning accusations of wrongdoing to "Defendants" as an indivisible group, rather than identifying conduct that *Rhodes herself* allegedly committed—is a tacit acknowledgment that Plaintiffs have no *specific facts* that Rhodes engaged in any of the conduct described in the complaint (because, otherwise, Plaintiffs would have alleged them). This conclusion is only confirmed by Rhodes' attestation that she did not have—and could not possibly have had—any involvement in causing Mr. Thrower's alleged injuries or death. (Decl. ¶ 5.) In sum, Plaintiffs

have not pleaded a wrongful death claim against Rhodes, and their failure is clear under state law.

### B.  Plaintiffs Fail To Plead A Secondary-Liability Claim Against Rhodes

#### 1.  Plaintiffs Do Not Plead Alter-Ego Liability

45.  Plaintiffs assert that all "Defendants" are liable under an alter-ego theory in a single sentence in the Complaint ¶ 10: "The Defendants operated in such a way as to make their individual identities indistinguishable, and are therefore, the mere alter-egos of one another." In rejecting a similar alter-ego theory in *Johnson*, this Court noted that a plaintiff asserting alter-ego liability must plead that "(1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." (*Johnson* Order at 8, lines 3-8 (quoting *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (internal quotation marks and emphasis omitted)).) The Court ruled that the *Johnson* plaintiffs failed to allege alter-ego theory as to Rhodes because these elements were not alleged: "plaintiffs do not aver Rhodes maintains an ownership interest in [GranCare], or that injustice would result if Rhodes and [GranCare] are not found to be one and the same." (*Id.* at 8, lines 8-10.)

46.  The Complaint in this case likewise fails to establish alter-ego liability as to Rhodes on the same grounds. Plaintiffs do not—*because they cannot*—allege that Rhodes has an ownership interest in GranCare. (Compl. ¶ 4.) In addition, the Complaint does not include even the bare assertion that not treating Rhodes and GranCare as alter egos would sanction fraud or other similar injustice. *See Orosa v. Therakos, Inc.*, No. C-11-2143 EMC, 2011 WL 3667485, at *6-7 (N.D. Cal. Aug. 22, 2011) (complaint failed to plead "injustice" element of alter-ego theory (collecting cases)).

47.  Finally, Plaintiffs' alter-ego allegation does not pass muster in any event because it is unsupported by any *specific facts* attributable to Rhodes (or, for that matter, any other Defendant). Such conclusory pleading is insufficient to allege alter-ego liability. *See Quigley v. Verizon Wireless*, No. C-11-6212 ECM, 2012 WL 1945784, at *3 (N.D. Cal. May 30, 2012)

(collecting authorities). In sum, Plaintiffs fail to plead alter-ego liability against Rhodes and their failure is readily apparent under California law.

### 2. Plaintiffs Do Not Plead Conspiracy

48. Plaintiffs also seem to allege that all "Defendants" are liable for conspiracy by claiming that they acted "in concert with one another in furtherance of their common design and agreement to accomplish a particular result," namely, maximizing profits by underfunding and understaffing the Facility. (Compl. ¶ 11.)

49. In *Johnson*, the Court noted that conspiracy theory of liability "requires proof that [1] the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as [2] the specific intent to commit the elements of that offense, together with [3] proof of the commission of an overt act by one or more of the parties to such agreement in furtherance of the conspiracy." (*Johnson* Order at 9, lines 8-11 (quoting *People v. Johnson*, 57 Cal. App. 4th 250, 257 (2013) (bracketed numbers added)).) The Court noted that, "Plaintiffs make no such averments regarding Rhodes." (*Id.* at 9, line 12.) Plaintiffs in this case make no such averments against Rhodes either. Accordingly, Plaintiffs' conspiracy theory fails to state a viable claim against Rhodes, which is obvious under state law.

### 3. Plaintiffs Do Not Plead Aiding and Abetting Liability

50. Finally, Plaintiffs allege aiding and abetting liability in a single, conlusory sentence in the Complaint ¶ 11: "[T]he Defendants aided and abetted each other in accomplishing the acts and omissions alleged herein." To state a claim for aiding and abetting the commission of an intentional tort, a plaintiff must plead that the defendant "(1) knows the other person's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 324 (2013); *see also Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005) (explaining that aiding and abetting theory "requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting

another in performing a wrongful act").

51.     Plaintiffs' Complaint does not allege that Rhodes committed any specific act or omission, much less "substantially assisted" other Defendants in the commission of a wrongful act.  Moreover, Plaintiffs' Complaint pleads no facts from which the Court even could speculate that Rhodes made a "conscious decision" to participate in such activities, which she did not do. (Decl. ¶ 5.)  Accordingly, Plaintiffs have failed to plead aiding and abetting liability as to Rhodes.

52.     In short, as in *Johnson* and *Cranston*, Plaintiffs' Complaint does not—and cannot—state a claim against Rhodes, and Plaintiffs' failure is palpably obvious under California law.  The Complaint simply fails to allege that Rhodes committed any wrongful conduct at all.

53.     Truth be told, Plaintiffs sued Rhodes in the State Court Action merely because of her position as GranCare's Administrator in an obvious effort to bar removal of this action to federal court.  In similar cases, the Ninth Circuit and other courts repeatedly have concluded that a resident defendant was improperly joined.  *See, e.g., Chandler v. NDeX West, LLC*, 571 F. App'x 606, 608 (9th Cir. 2014) ("[Two defendants] were fraudulently joined because [Plaintiff] failed to allege the necessary elements of any of the five state law causes of action against them."); *Hoffman v. May*, 313 F. App'x 955, 957 (9th Cir. 2009) (concluding that defendant was improperly joined, in part, because "[plaintiff] failed to allege facts connecting [defendant] to th[e] harm or otherwise demonstrating a basis for tort liability against him."); *Brown v. Allstate, Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding that individual defendants were fraudulently joined because "[t]he complaint as it existed at removal does not allege any wrongdoing by the[m]"); *see also Bangor v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) ("The Complaint consists only of conclusory and generic allegations of wrongdoing on the part of all Defendants.  Such allegations are not sufficient to show that [a nursing home administrator] was not fraudulent joined.").  Plaintiffs' Complaint compels the same outcome here as to Rhodes, whose presence must be disregarded in assessing federal diversity jurisdiction.

54. As required by 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, the Removing Defendant MHC will give written notice thereof to Plaintiffs in the form attached as **Exhibit E**, which will be filed in the California Superior Court for Contra Costa County.

Dated: December 7, 2015                **GIOVANNIELLO LAW GROUP**

By:   */s/ Thomas C. Swann*
Alexander F. Giovanniello
Thomas C. Swann
Attorneys for Defendants
GRANCARE, LLC dba VALE HEALTHCARE CENTER, MARINER HEALTH CARE, INC., and REMY RHODES

## PROOF OF SERVICE

I am employed in the county of Orange, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is One Pointe Drive, Suite 300, Brea, California 92821

On **December 7, 2015,** I served the foregoing document(s) described as, NOTICE OF REMOVAL, by placing the true copies thereof enclosed in sealed envelopes address as follows:

Stephen Garcia
William Artigliere
GARCIA, ARTIGLIERE & MEDBY
One World Trade Center, Suite 1950
Long Beach, California 90831
Tel: (562) 216-5270
Fax: (562) 216-0271
*Attorneys for PLAINTIFFS*

(XX)  BY U.S. MAIL: I am "readily familiar" with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice the envelope was sealed and placed for collection and mailing with the United States Postal Service on that same day with postage thereon fully prepaid at Brea, California following ordinary business practices.

(  )  BY PERSONAL SERVICE: I personally delivered the documents to the person(s) at the address(es) listed above (or on the attached service list). (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

(  )  BY FEDERAL EXPRESS OVERNIGHT DELIVERY: I placed said envelope(s) for collection and overnight delivery at a regularly utilized drop box of the overnight delivery carrier.

(  )  BY FAX TRANSMISSION: I faxed said document(s) to the person(s) indicated on the below service list; as a courtesy copy;

Executed on **December 7, 2015,** at Brea, California.

(XX)  STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Lovella Agra